IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DARRELL K. WERNER,                    )
                                      )
            Plaintiff,                )
                                      )
vs.                                   )      Case No. 3:21-CV-1431
                                      )
GREGORY HACKER,                       )
                                      )
            Defendant.                )
                                      )

MEMORANDUM AND ORDER

**BEATTY, Magistrate Judge:**

This matter is before the Court on the Motion for Preliminary Injunction (Doc. 6) filed by Plaintiff Darrell K. Werner ("Werner") and the Motion to Dismiss (Doc. 20) filed by Defendant Gregory Hacker ("Hacker"). For the reasons explained below, the Motion to Dismiss and the Motion for Preliminary Injunction are denied.

BACKGROUND

Werner is a citizen and resident of Illinois who applied for a Firearms Owners Identification Card ("FOID card") in early 2014 (Doc. 1-1). He erroneously indicated he is a felon on his application and filed an administrative appeal with the Firearms Services Bureau of the Illinois State Police to correct the error (*Id.*) The appeal was pending for seven years, and Werner had still not obtained a FOID card, so he initiated this lawsuit under 42 U.S.C. § 1983 for violations of his Second and Fourteenth Amendment rights (*Id.*). Werner brings the suit against Hacker, the Chief of the Firearms Services Bureau, in his official capacity, and seeks injunctive relief requiring Hacker to issue him a FOID card

(*Id.*).

On November 21, 2021, Werner filed a Motion for Preliminary Injunction (Doc. 6). He requests the Court enjoin Hacker from failing to issue him a FOID card (*Id.*). On January 20, 2022, Hacker filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) (Doc. 20). Hacker argues he is not the proper party in this case and that Werner has no right to a FOID card based upon his admission that he is a felon (*Id.*). Also, Hacker requests the Court strike Werner's prayer for monetary damages under Federal Rule of Civil Procedure 12(f) (*Id.*).

### LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) states that a defendant can move to dismiss a complaint that fails to "state a claim upon which relief can be granted." For a claim to survive a Rule 12(b)(6) motion to dismiss, the claim must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 544, 555 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a motion to dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Fortres Grand Corp. v. Warner Brow. Entm't, Inc.*, 763 F.3d 696, 700 (7th Cir. 2014).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural res. Def. Council*, 555 U.S. 7 (2009).  To obtain a preliminary injunction, a plaintiff must establish (1) without such relief, he will suffer irreparable harm; (2) traditional legal remedies

would be inadequate; and (3) he has some likelihood of success on the merits. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020).

## ANALYSIS

Hacker argues that the Complaint fails to state a claim because Illinois' FOID Card Act, 430 Ill. Comp. Stat. § 65/0.01, *et seq.*, requires Werner to appeal FOID card denials to the Director of the Illinois State Police ("ISP"), not the Chief of the Firearms Services Bureau. Thus, Hacker states the Director of the ISP is the proper party in this action.

To the extent Hacker argues that Werner has failed to exhaust his state administrative remedies, the Supreme Court has stated there is no duty to exhaust state administrative remedies before pursuing an action under 42 U.S.C. § 1983. *Patsy v. Board of Regents of State of Florida*, 457 U.S. 496 (1982). The general rule concerning exhaustion is "that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *McKart v. United States*, 395 U.S. 185, 193 (1938). However, where a statutory requirement of exhaustion is not explicit, "courts are guided by congressional intent in determining whether applications of the doctrine would be consistent with the statutory scheme." *Patsy*, 457 U.S. at 502 n.2. In *Patsy*, the Supreme Court held that "[b]ased on the legislative histories of both § 1983 and § 1997e…exhaustion of state administrative remedies should not be required as a prerequisite to brining an action pursuant to § 1983." *Id.* at 516. In *Horsely v. Trame*, 808 F.3d 1126, 1129 (7th Cir. 2015), the Seventh Circuit cited *Patsy* to find the plaintiff was not required to appeal her FOID card denial before bringing a § 1983 claim for violations of her Second Amendment rights. Similarly, here, Werner was not required to exhaust his

administrative remedies under the FOID Card Act before bringing this case.

Also, Hacker contends he is not the proper party to this case and should be dismissed. He is sued in his official capacity as the Chief of the Firearms Services Bureau for injunctive relief. Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). A proper party for injunctive relief is the person who "would be responsible for ensuring that any injunctive relief is carried out." *Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011).

Here, Werner claims the appeal process concerning the denial of his FOID card application is violating his constitutional rights and he seeks injunctive relief in that he requests Hacker issue him a FOID card. However, Hacker argues he is not the proper party because the Firearms Services Bureau is not responsible for handling appeals of denials of FOID card applications. Instead, under Section 10 of the FOID Card Act, 430 Ill. Comp. Stat. § 65/10, the Illinois State Police is responsible for overseeing the appeals process: "Whenever an application for a Firearm Owner's Identification Card is denied . . .the aggrieved party may appeal to the Illinois State Police for a hearing upon such denial."

Hacker points the Court to *Rhein v. Coffman*, 825 F.3d 823 (7tth Cir. 2016), where the Chief of the Firearms Services Bureau determined the plaintiff presented a clear and present danger to another individual and summarily revoked the plaintiff's FOID card. The plaintiff's FOID card was reinstated over one year later and the plaintiff sued the Chief under § 1983, in his individual capacity, for failing to return his firearms sooner. *Id.*

at 824-25; *see Rhein v. Pryor*, 2014 WL 1099157, at *1 (N.D. Ill. March 20, 2014) (explaining the claims against the Chief (Coffman) were brought against him in his individual capacity). The Seventh Circuit found the State Police, not the Firearms Services Bureau, was responsible for deciding whether to restore a FOID card under the statutes and regulations. *Id.* at 825. Further, the complaint did not allege the Chief personally engaged in any culpable conduct. *Id.* at 825-26. Thus, the Chief of the Firearms Services Bureau was not a proper party. *Id.*

This case is distinguishable from *Rhein.* In *Rhein*, the plaintiff attempted to hold the Chief of the Firearms Services Bureau liable in his *individual* capacity for the delayed reinstatement process, even though he had no role in the process. Here, Werner says that Hacker and the Firearms Services Bureau are actually handling and ruling on appeals, regardless of the governing statutes and regulations. Doc. 1-1, p. 5. The Complaint alleges, "In truth and fact, there is no administrative hearing officer to actually hear or determine such appeals, and that, in an attempt to compensate, Defendants Trame and Hacker, whether afforded the statutory authority, or not, have, as a matter of practice, personally handled and ruled on appeals." *Id.*

Further, unlike in *Rhein*, here Werner seeks injunctive relief for the issuance of a FOID card and alleges Hacker is responsible for issuing the card. *See* Doc. 1-1, p. 3. The Complaint states, "FOID cards are issued by the firearms Services Bureau, Gregory Hacker being the current occupant of the office, and Gregory Hacker is sued in his official capacity." *Id.* Hacker does not dispute he would be responsible for ultimately issuing Werner a FOID card if he succeeds on the merits of his case. For purposes of a motion to

dismiss, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inference in favor of the plaintiff. *Fortres*, 763 F.3d at 700. Accordingly, Hacker's request to be dismissed as the improper party is denied.

Next, Hacker argues the Complaint fails to state a claim because Werner's FOID card application was properly denied based on his admission he is a felon. However, Werner is not challenging the initial denial of his FOID card application or the constitutionality of the provisions of the FOID Card Act relating to felony convictions. Instead, he alleges Hacker's delay in processing his appeal is violating his Second and Fourteenth Amendment rights. However, Hacker argues that Werner's Second Amendment claim still fails because delays that are a byproduct of the "constitutionally legitimate purpose" of preventing high-risk classes of people like felons from obtaining firearms likely do not implicate the Second Amendment (Doc. 20, p. 5) (quoting *Marszalek v. Kelly*, 2021 WL 2350913 (N.D. Ill. June 9, 2021)).

Hacker cites *Marszalek v. Kelly*, 2021 WL 2350913, at *7 (N.D. Ill. June 9, 2021), where the plaintiffs brought a lawsuit for violations of their Second and Fourteenth Amendment rights for months-long delays in processing FOID card applications. The plaintiffs moved for a preliminary injunction and the Court applied the two-step process for evaluating Second Amendment claims. *See Id.* This process (1) asks whether the restricted activity is protected by the Second Amendment and, if it is, (2) considers "the strength of the government's justification for restricting or regulating the exercise of Second Amendment rights." *Id.* at *6 (quoting *Ezell v. City of Chicago*, 651 F.3d 684, 701 (7th Cir. 2011)).

In *Marszalek*, at step one, the Court found the delay in processing FOID card applications implicated the Second Amendment:

> The relevant question…is whether the Second amendment is implicated by a state agency's noncompliance with state law aimed at preventing unauthorized persons from possessing firearms, when that results in widespread delays in the ability of authorized people to possess firearms…If the ISP spent three decades vigorously reviewing *every* FOID applicant, that would effectively prevent Illinois residents from exercising that core right of the Second Amendment. . .Of course, the delays at issue in this case are on the order of months, not decades. But if the Second Amendment is not implicated by such delays, then Illinois residents would have no constitutional redress if the application processing time did in fact lengthen to years. **Clearly, at some point, agency dithering would violate the Second Amendment.** Fixing that point would be difficult, but the Court need only decide whether the ISP's current practice likely constitutes a violation. To make that determination, we must continue to *Ezell's* second step.

*Id.* at *6-7 (bolded emphasis added).

At step two, the Court found, "Although the delays are a burden on the Second Amendment rights of the applicants, they are not so severe as to render the process unconstitutional. Thus, it is unlikely that the plaintiffs will succeed on the merits of their Second Amendment claim." *Id.* at *10.

The preliminary injunction opinion in *Marszalek* is not entirely persuasive here. First, in *Marszalek*, the Northern District of Illinois scrutinized the plaintiffs' claims under the standard for a preliminary injunction, which requires a plaintiff to establish a likelihood of success on the merits. When evaluating a motion to dismiss, the Court only considers whether the Complaint states a plausible claim. Notably, months after the preliminary injunction opinion in *Marszalek*, the same court found the plaintiffs' Second Amendment claims survived a Rule 12(b)(6) motion to dismiss. *Marszalek v. Kelly*, 2022

WL 225882 (N.D. Ill. Jan. 26, 2022).

Further, *Marszalek* involved a delay of months, not years, as alleged here. "Clearly, at some point, agency dithering would violate the Second Amendment." *Marszalek*, 2021 WL 2350913, at *7. At the motion to dismiss stage, it is simply not the Court's role to consider and determine whether the delay in this instance actually violates Werner's constitutional rights. But the Complaint at least states a claim to relief that is plausible on its face, which is all that is required at this point.

Hacker's Motion to Dismiss alternatively moves to strike Werner's request for monetary damages. Federal Rule of Civil Procedure 12(f) provides that the Court "may strike from a pleading. . .any redundant, immaterial, impertinent, or scandalous matter." Here, Werner does not contest that he is prohibited from seeking damages against a state official in his official capacity and he denies that he seeks damages at all. Although the Complaint alleges, "Plaintiff's damages are irreparable, but worth well in excess of $50,000.00," the *ad dendum* of the Complaint only requests injunctive relief (Doc. 1-1, p. 4). Accordingly, the Motion to Dismiss, including its request to strike portions of Werner's Complaint, is denied.

Finally, the Court must address Werrner's motion for preliminary injunction. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). *Accord Valencia v. City of Springfield, Illinois*, 883 F.3d 959, 965 (7th Cir. 2018) ("[A] preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.") (citations omitted). The purpose of

an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). To determine whether a preliminary injunction is warranted, the Court conducts a two-phase analysis.

In the threshold phase, the party seeking the preliminary injunction has the burden of demonstrating that (1) he has a reasonable likelihood of success on the merits of his underlying claims, (2) traditional legal remedies are inadequate, and (3) absent the injunction he will suffer irreparable harm in the period prior to the final resolution of his claims. *Valencia*, 883 F.3d at 965.

If the moving party makes the requisite showing at the threshold phase, the court moves to the balancing phase, where it weighs the harm the plaintiff will suffer without an injunction against the harm the other parties and the public will suffer if the court were to grant the requested relief. *Valencia*, 883 F.3d at 965. This assessment is made on a sliding scale: "[t]he more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh in his favor." *Id.* (citation omitted).

Here, although it is true that Werner has pleaded a plausible claim against Hacker to survive a 12(b)(6) motion to dismiss, he is not entitled to a preliminary injunction. *See, e.g., Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 823 (7th Cir. 2019) (explaining that pleading a plausible claim is not the same as demonstrating a likelihood of success on the merits, as required for a preliminary injunction). In fact, his motion is woefully deficient and comes nowhere close to meeting the high threshold required for a preliminary injunction. Werner's motion is two pages in length (excluding the signature

and certificate of service page), and is devoid of any argument or citations to legal authority that establish the necessary elements for obtaining a preliminary injunction. His Motion simply reiterates the allegations in the Complaint and cites to Rule 65(a).  The motion falls far short of what is required to prevail on a preliminary injunction and does not get past even the threshold phase of the preliminary injunction analysis (*supra* p. 9). The motion is denied.

C<small>ONCLUSION</small>

For the reasons explained above, Plaintiff Darrell K. Werner's Motion for Preliminary Injunction (Doc. 6) is **DENIED without prejudice** and Defendant Gregory Hacker's Motion to Dismiss (Doc. 20) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: April 19, 2022**

**s/ Mark A. Beatty**\
**MARK A. BEATTY**\
**United States Magistrate Judge**
